IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROMARIS WALTON, #B69607,  )<br>  )<br>Plaintiff,  )<br>  )<br>vs.  )<br>  )<br>DEANNA BROOKHART,  )<br>LT. LIVINGSTON,  )<br>C/O GIPSON,  )<br>and MS. ELLIOT,  )<br>  )<br>Defendants.  ) | Case No. 3:22-cv-02908-MAB |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Romaris Walton, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Sheridan Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights during his confinement at Lawrence Correctional Center ("Lawrence") (Doc. 1). He claims that he contracted COVID-19 because he was not properly quarantined, and asserts his cell placement was changed in retaliation for grievances he filed against staff who were not following COVID-19 protocols. (Doc. 1, pp. 18-20).

The Complaint (Doc. 1) is now before the Court for preliminary review under 28 U.S.C. § 1915A,[1] which requires the Court to screen prisoner Complaints to filter out non-

---

[1] The Court has jurisdiction to screen the Complaint based on Plaintiff's consent to the full jurisdiction of a magistrate judge, and the limited consent by the Illinois Department of Corrections to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between this Court and the Illinois Department of Corrections.

1

meritorious claims. 28 U.S.C. § 1915A(a). Any portion of a Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

### THE COMPLAINT

The Complaint presents the following allegations: Plaintiff filed grievances against several Lawrence officers including Defendants C/O Gipson and Lt. Livingston between April 20, 2020 and November 14, 2020, for their failure to wear face masks during the COVID-19 pandemic. (Doc. 1, pp. 18, 22-25, 30). Plaintiff also filed grievances against Defendant Warden Brookhart and Defendant Placement Supervisor Elliott for not following the mandates to wear face masks and PPE (personal protective equipment) gear. (Doc. 1, p. 19).

On November 23, 2020, Plaintiff and his cellmate in 1-house, C-wing upper 19 were tested for COVID-19. Plaintiff tested negative but his cellmate was positive. The cellmate was moved to a quarantine cellhouse. On November 25, 2020, the day after Plaintiff got his negative result, he was moved to cell L3 on 6C-wing. He asserts this move was retaliatory because other inmates, who had tested positive, "were allowed to stay on the same wing, with quarantine signs on their cell doors, with instructions to remain separate from other inmates on the same wing." (Doc. 1, p. 18). Plaintiff argues the move made no sense because he had not tested positive, yet he was moved to a quarantine wing. He asserts that he could have been left in 1-house instead of being moved to 6C-wing, where he faced more risk.

After this move, unnamed officials attempted to give Plaintiff a new cellmate who

had also tested negative. Plaintiff declared a hunger strike to protest being given a cellmate when Plaintiff was supposed to be under quarantine. He asserts he was at high risk for complications from COVID-19 as a Black man, almost age 50, with "hyper-Cholestrolemia." (Doc. 1, p. 18). Plaintiff ended his hunger strike on November 27, 2020. On November 28, 2020, many inmates on 6C-wing began testing positive for COVID-19, where they had been allowed to move freely outside their cells and staff had not been properly wearing PPE. Plaintiff contracted COVID-19 sometime between November 28-30, 2020. His symptoms included loss of taste and smell, fatigue, muscle aches, chest pain, headaches, and light-headedness. While he was still sick, on December 1, 2020, Plaintiff was moved to another cellhouse, where the Placement Officer[2] again tried to place him with a cellmate.

Plaintiff continued to suffer from "long-haul" symptoms including lingering loss of taste and smell at times, loss of mental alertness, memory lapses, and loss of physical equilibrium, as of November 2022. (Doc. 1, p. 19).

## DISCUSSION

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

> **Count 1:** Eighth Amendment deliberate indifference to serious medical needs claim against all Defendants for failing to protect Plaintiff from infection with COVID-19.
>
> **Count 2:** First Amendment retaliation claim against Defendants for moving Plaintiff to 6C-wing cellhouse because Plaintiff had filed grievances against Defendants and other prison

---

[2] Plaintiff does not identify this individual by name. (Doc. 1, p. 18).

3

**officials.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[3]

## Preliminary Dismissals

The Complaint seeks relief against several individuals (Officers Kocher, Leanear, and Seed) who are not named as Defendants. (Doc. 1, p. 20). The case caption and list of Defendants include only Brookhart, Elliott, Livingston, and Gipson. (Doc. 1, pp. 1-2). The Court will not treat parties not listed in the caption as defendants, and any claims against them are dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption").

## Count 1

Prison officials may violate the Eighth Amendment when they subject an inmate to prison conditions that deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective conditions must have resulted in an unquestioned

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

4

and serious deprivation of basic human needs such as food, medical care,[4] sanitation, or physical safety. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). There is also a second, subjective element to an Eighth Amendment claim – establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer*, 511 U.S. at 837, 842. The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions. *Farmer*, 511 U.S. at 842. It is well settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

Certainly, Plaintiff and his fellow inmates, as well as prison staff, faced a risk of infection with COVID-19 during the pandemic in 2020, which amounts to a substantial risk of serious harm. It is obvious from Plaintiff's narrative that prison officials were aware of this health risk, because they implemented quarantine policies as well as requirements for staff to wear PPE in order to mitigate the risk of spreading the disease. Thus, the Defendants who adopted these policies appear to have responded reasonably to the risk. This is enough to avoid liability under the deliberate indifference standard. *See Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002) ("prison officials who actually knew of a substantial risk to inmate health or safety are free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted") (citing *Farmer,* 511 U.S. at 847; *Soto v. Johansen,* 137 F.3d 980, 981 (7th Cir. 1998)).

---

[4] Plaintiff does not raise any claim related to his medical treatment or lack thereof after he contracted COVID-19.

5

Plaintiff complains that Defendants and others failed to comply with the prison's PPE requirements by not wearing face masks properly, and further, that his cell placement was contrary to quarantine guidelines. The failure to follow government-agency health guidelines such as those informing the prison's PPE and quarantine rules does not rise to the level of a constitutional violation. *See Mays v. Dart*, 974 F.3d 810, 823 (7th Cir. 2020) ("CDC Guidelines – like other administrative guidance – do not themselves set a constitutional standard."). "[W]hile the recommendations of these various groups may be instructive in certain cases, they simply do not establish the constitutional minima; rather, they establish goals recommended by the organization in question." *Id.* Likewise, violations of state laws or prison policies do not amount to a violation of the Constitution under § 1983. *Pulera v. Sarzant*, 966 F.3d 540, 551 (7th Cir. 2020) (a violation of jail policy is not cognizable under § 1983); *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) (§ 1983 does not protect plaintiffs from violations of state law or policy). Accordingly, the individual Defendants' failure to follow prison policies on the use of PPE on various occasions did not violate Plaintiff's constitutional rights. Moreover, the Complaint does not demonstrate that any Defendant acted with the requisite culpable state of mind – deliberate indifference to a substantial risk of serious harm to Plaintiff – as opposed to merely being careless, negligent, or incompetent. Ultimately, Plaintiff does not set forth facts to demonstrate that a deliberately indifferent action of any individual Defendant caused him to contract COVID-19 at the end of November 2020.

As to Plaintiff's complaint that he was not appropriately quarantined from

inmates who had tested positive for COVID-19, no constitutional violation is apparent from the allegations. Plaintiff disagreed with the decision to move him away from the 1-house C-wing upper 19 cell, reasoning that he would have been safer there than in 6C-wing where he was placed (and where he developed COVID-19 symptoms). It is not clear from Plaintiff's narrative whether the "other COVID-19 positive inmates" who "were allowed to stay on the same wing" under quarantine, refers to Plaintiff's former 1-house upper 19 cell, or to his new 6C-wing placement. (Doc. 1, p. 18). It is clear that after Plaintiff was moved, an unidentified official tried to put another inmate, who also tested negative for COVID-19, in Plaintiff's cell. But this action does not demonstrate deliberate indifference to Plaintiff's health. Overall, Plaintiff's description of events indicates that prison officials were attempting to keep COVID-positive inmates in quarantine and separate from prisoners who were COVID-negative, but that those attempts failed to stop the spread of the disease.

Overall, the Complaint fails to set forth an actionable deliberate indifference claim against any of the Defendants. Count 1 will therefore be dismissed without prejudice against all Defendants.

**Count 2**

Prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002). The issue in a retaliation claim is whether the plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the First Amendment

activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *See McKinley v. Schoenbeck*, 731 F. App'x 511, 515 (7th Cir. 2018) (quoting *Surita v. Hyde*, 665 F.3d 860, 878-79 (7th Cir. 2011)); *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

Here, Plaintiff alleges that after his cellmate tested positive for COVID-19, Plaintiff was relocated to a cell on 6C-wing because he had filed grievances against Defendants for their failure to follow PPE protocols. It is plausible that Plaintiff was moved in retaliation for those grievances, but it is at least equally plausible that the move was made in an attempt to separate prisoners who tested negative, like Plaintiff, from those who were COVID-positive. Further, Plaintiff does not identify which of the four Defendant(s) made the decision to move him; he merely says he "was moved." (Doc. 1, p. 18). A plaintiff is required to associate specific defendants with specific claims so these defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003).

Because Plaintiff does not associate any Defendant with the claim that his cell reassignment was done in retaliation for his grievances, Count 2 will be dismissed without prejudice. Plaintiff will have the opportunity to attempt to re-plead his claims in an amended complaint.

### DISPOSITION

The Complaint (Doc. 1) is **DISMISSED without prejudice** for failure to state a

claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that, should he wish to proceed with this case, Plaintiff shall file his First Amended Complaint within 28 days of the entry of this order (**on or before August 8, 2023**).

An amended complaint supersedes and replaces the original complaint, rendering it void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). Therefore, the Court will not accept piecemeal amendments to the original Complaint. The First Amended Complaint must contain all the relevant allegations in support of Plaintiff's claims and must stand on its own, without reference to any other pleading. Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. The First Amended Complaint will be subject to review under 28 U.S.C. § 1915A.

Should Plaintiff file a First Amended Complaint, it is strongly recommended that he use the civil rights complaint form designed for use in this District. **He should label the form "First Amended Complaint" and use the case number for this action (No. 22-cv-2908-MAB)**. Plaintiff should identify each defendant in the case caption and include sufficient factual allegations against each defendant to describe what the defendant did or failed to do to violate his constitutional rights, *see DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (a successful complaint generally alleges "the who, what, when, where, and how …."). As much as possible, Plaintiff should include the relevant facts in chronological order, inserting each defendant's name where necessary to identify the actors and each defendant's actions. While Plaintiff may use "John Doe" or "Jane Doe" to

refer to parties whose names are unknown, he must still follow pleading standards and include a short, plain statement of the case against that party. He must describe each Doe Defendant and their involvement in the alleged unconstitutional conduct (for example, John Doe did X and Jane Doe did Y). No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint.

If Plaintiff fails to file an amended complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case will be dismissed without prejudice for failure to comply with a court order and/or failure to prosecute his claims. FED. R. CIV. P. 41(b); *Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915A. Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

Plaintiff is **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable, regardless of whether Plaintiff files a First Amended Complaint. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Plaintiff is further **REMINDED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

To facilitate Plaintiff's compliance with this Order, the Clerk is **DIRECTED** to mail

10

Plaintiff a blank civil rights complaint form.

    **IT IS SO ORDERED.**

    **DATED: July 18, 2023**

                                        <u>/s/ Mark A. Beatty</u>
                                        **MARK A. BEATTY**
                                        **United States Magistrate Judge**